IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 11, 2001 Session

## DEE ANN CURTIS GALLAHER v. CURTIS J. ELAM

**Appeal from the Juvenile Court for Knox County**
**No. B-3443     Carey Garrett, Judge**

**FILED JANUARY 29, 2002**

**No. E2000-02719-COA-R3-CV**

**DISSENTING OPINION**

Tennessee Comp. R. & Regs. 1240-2-4-.03(4), promulgated by the Department of Human Services pursuant to Tenn. Code Ann. §36-5-101 reads:

> Children of the obligor who are not included in a decree of child support shall not be considered for the purposes of reducing the obligor's net income or in calculating the guideline amount. In addition, these children should not be considered by the court as a reason for deviation unless they meet the requirements of Rule 1240-2-4-.04(4).

This Rule was found to be unconstitutional by the majority on the grounds that the quoted provision "discriminates" against other children of obligor, and in this case residing in the household of the obligor.

I dissent from the majority's holding for several reasons. First, courts are admonished not to decide constitutional questions unless it is "absolutely necessary". *Strait v. Burdin*, 924 S.W.2d 82 (Tenn. 1996).

The majority recognizes that the constitutional issue would not call for a strict scrutiny analysis, but rather that the "reduced scrutiny or rational basis test" is applicable. *See Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997).

This record presents no factual basis for either the Trial Court or this Court to reach the constitutional issue raised. One of appellee's arguments is that the guidelines treat children differently who are subject to a support order, as opposed to those who are not, because the child who gets a support award gets a definite percentage of the obligor's income and there is no showing that the others will get an equal amount. Appellee, however, has provided no evidence that this was

actually the case. The father has earned an average of approximately $300,000.00 per year for the past five years, which puts him in the top 1% of income of all income tax filers.[1] The three children living with the father enjoy a very high standard of living, including private schools at the cost of $3,000.00 per month, reside in a home with a monthly mortgage payment of $3,800.00, and have access to expensive motor vehicles, thereby enjoying an unreasonably high standard of living, while the biological child which is subject to the guidelines must exist on a small fraction of such benefits. The facts of this case demonstrate that this child, if anything, gets unequal treatment, *vis a vis* the marital children. Yet the majority addresses the constitutional issue and holds the above-mentioned regulation unconstitutional, without citing any case authority for its position, but misguidedly relies on two maudlin dissents from other jurisdictions for its decision.

It is the duty of this Court and all courts to uphold a statute if the statute is not purely arbitrary. *Epstein v. State*, 366 S.W.2d 914 (Tenn. 1963).

The guidelines state they were enacted to comply with federal and state requirements, and that some of the goals behind the enactment of the same were to "decrease the number of impoverished children living in single parent families", to "make child support awards more equitable by ensuring more consistent treatment" of similarly situated individuals, to provide guidelines to parties and the courts and to improve the efficiency of the court process, and to "ensure that when parents live separately, the economic impact on the child(ren) is minimized and to the extent that either parent enjoys a higher standard of living, the child(ren) share(s) in that higher standard." Tenn. Comp. R. & Regs. 1240-2-4-.02. The guidelines also provide that they are to be applied as a rebuttable presumption, and that if the court finds sufficient evidence to rebut the presumption, it can make a different award so long as the court makes specific findings regarding why the guideline amount is inappropriate, and so long as the court consider the best interests of the child. Tenn. Comp. R. & Regs. 1240-2-4-.02(7).

The dissenting opinions that the majority relies upon assert that the guidelines are unwise and are inequitable. However, our Supreme Court has stated that it is not authorized to strike down a statute that the court may consider unwise or inequitable, but the statute must create a real deprivation of constitutional rights. *Baldwin v. Knight*, 569 S.W.2d 450 (Tenn. 1978).

These guidelines provide a multitude of valid reasons for their existence, including equity and predictability of child support awards and, more importantly, to ensure children are not adversely impacted because their parents do not live together. The guidelines ensure that children who do not live with the parent who makes substantial sums of money, will get the benefit of the parent's higher income, just as if they lived in the parent's household. While it is true that this child's mother can pay for basic necessities on her income of $36,000.00 per year, it certainly does not provide a standard of living anywhere near that of the father's three other children, who enjoy

---

[1]Source: IRS data supplied to Congress; 1999 adjusted gross income of $293,000.00 up, puts taxpayer in the top 1% of income of all filers.

the benefits of an income of ten times that amount or more in some years than this child's mother earns.

The application of the guidelines in this case is fair, and does not treat this child any better than the other children. In fact, if it were not for the guidelines, this child would certainly be treated much worse than the other children, as has been aptly demonstrated by the father's vehement resistance to paying child support in this case.[2] Even with the guideline support, this child will likely not have all of the material things enjoyed by the other children. Thus, there is no disparate treatment. Given the circumstances of the case, there can be deviations from the guidelines, since they are just a rebuttable presumption. In this case if the father could show that the child support in accordance with the guidelines would cause a negative impact on his other children and create economic hardship, then the court has the authority to order a downward deviation. The guidelines expressly provide for this in Tenn. Comp. R. & Regs. 1240-2-4-.04(4), and state that the court may consider such an action as necessary to "achieve equity between the parties". With this "escape valve" provision in place, there can be little argument that the guidelines create disparate treatment, since the court has the authority to consider hardships which would affect the other children.[3]

I would uphold the guidelines as constitutional and resolve every doubt in favor of constitutionality. *Riggs v. Burson*, 941 S.W.2d 44 (Tenn. 1997); *In re Adoption of M.J.S.*, 44 S.W.3d 41 (Tenn. Ct. App. 2000). Also, as this Court has previously recognized, the guidelines have been before our Supreme Court on many occasions and no concern has been expressed regarding their constitutionality. *See State ex rel. Armstrong v. Coleman*, 2001 WL 557991 (Tenn. Ct. App. May 24, 2001), *citing State, ex rel. Coleman v. Clay*, 805 S.W.2d 752 (Tenn.1991); *Nash v. Mulle*, 846 S.W.2d 803 (Tenn.1993); *Jones v. Jones*, 930 S.W.2d 541 (Tenn.1996); *Brooks v. Brooks*, 992 S.W.2d 403 (Tenn.1999).

I would reverse the Judgment of the Trial Court and enter Judgment in accordance with the guidelines.

_____
HERSCHEL PICKENS FRANKS, J.

[2]Some individuals only learn through experience the reality of the ancient Appalachian folklore, that if you dance you have to pay the fiddler.

[3]The restriction in the guidelines as to children not in the decree goes to establishing the guideline percentage and not whether their support would create a hardship on the obligor.